UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

MARTIN VARGAS,

    Plaintiff,

v.                                                                     Civ. No. 22-182 WJ/GJF

SERGEANT MARK NORRIS, et al.

    Defendants.

## ORDER GRANTING MOTION TO COMPEL

THIS MATTER is before the Court on Defendant City of Albuquerque's Motion to Compel [ECF 37] ("Motion"). The Motion is fully briefed. *See* ECFs 44 ("Response"), 49 ("Reply"). The Court heard oral argument on the Motion on January 13, 2023. *See* ECFs 52 (clerk's minutes), 55 ("Tr."). For the following reasons, the Court will **GRANT** the Motion.

**I. BACKGROUND**

The parties' Joint Status Report provides the following summary:

> This case arose out of an encounter Plaintiff Martin Vargas had with certain members of the Albuquerque Police Department . . . on May 25, 2018. [Plaintiff] was shot by beanbag projectiles and a Taser. He sustained serious injuries requiring months of hospitalization. [Plaintiff] has brought claims for intentional torts and negligence under the New Mexico Tort Claims Act; false arrest and deprivation of rights under the New Mexico Constitution; negligence resulting in assault and battery; negligent training, supervision, discipline and ratification; excessive force under 42 U.S.C. § 1983; and a 42 U.S.C. § 1983 *Monell* claim.
>
> Defendants deny the Plaintiff's allegations, deny any constitutional or statutory violations of Plaintiff's rights and deny *proximately causing* any injury or damages to the Plaintiff.

ECF 13 at 1–2 (emphasis added).

Plaintiff seeks, *inter alia*, "compensatory damages, damages for pain and suffering and loss of enjoyment of life." *Id.* at 4; *see also* Compl. [ECF 3] at 33 (noting that such damages also include "all past and future medical and medically related expenses, . . . lost wages, [and] loss of

liberty"). For its part, the City insists that "Plaintiff's damages, if any, were due to an independent, intervening cause rather than due to any fault on the part of Defendants." *Id.* at 5; Answer [ECF 8] at 18.

The instant dispute concerns the City's "requests that this Court order the Plaintiff to supplement his discovery responses and provide the [City] with a HIPAA compliant release for records from 1997 to present." Mot. at 2.

## II. PARTIES' PRIMARY ARGUMENTS

### A. City's Arguments

The City contends that it is "entitled to the Plaintiff's complete medical history" to "properly evaluate the Plaintiff's damages"—particularly in light of (1) Plaintiff's "pre-existing medical/mental health issues" and (2) the exceptionally large amount of alleged damages, which includes compensation for "psychological injuries." *Id.* at 2, 6; *see also* Reply at 4, 8 (observing that "Plaintiff claims that he suffered permanent injuries and disabilities as a result of his contact with the Defendants," including "extreme psychological damages"). In other words, "[a]bsent a complete set of Plaintiff's medical and mental health records," the City insists that it cannot meaningfully evaluate "Plaintiff's alleged damages," including by assessing the "nature of Plaintiff's pre-existing condition[s]" and the findings of Plaintiff's experts. Reply at 2–3.[1]

The City represents that it simply "has no records to corroborate the nature, extent and duration of the Plaintiff's prior injuries." Reply at 6; *see also id.* at 4 (observing that the City "has

---

[1] Although Plaintiff's expert disclosures "contain detailed treatment summaries and information about Plaintiff's medical history," such disclosures do not contain the requested "medical records related to Plaintiff's medical history." Reply at 3 (quotation omitted); *see also id.* at 2–3, 8 (asserting that "Plaintiff's expert [on mental health damages] attributes 50% apportionment of the cause of [Plaintiff's] [m]ajor depressive disorder to the events [at issue in this case]"—but that the City "is not required to rely on [such] information" (quotation omitted)); *id.* at 5 (further asserting that the City is only liable for "[t]he *aggravation* of any preexisting ailment or condition" (emphasis added) (quotation omitted)).

not located any records produced by the Plaintiff which relate to his medical or mental condition prior to the date of the incident").² Furthermore, although Plaintiff has "agreed to produce a HIPAA release from 2008 to present," the City asserts that it needs "a HIPAA compliant release from 1997 to present" because "[t]his appears to be the date that the Plaintiff suffered a closed head injury and appears to coincide with the first date he provided concerning his PTSD and bipolar (unspecified) diagnosis." Mot. at 6; Reply at 4–5. The City further asserts that (1) "[m]any of Plaintiff's physical and mental health injuries were caused and/or treated in [this] timeframe"; (2) the City "should be permitted to review Plaintiff's medical records [from 1997 onward] to determine the nature, extent and duration of the Plaintiff's injuries . . . . prior to his contact with the Defendants"; and (3) "based on the Plaintiff's valuation of this case, the additional time and expense required to obtain these records in inconsequential." *Id.* at 4–5.

Finally, the City requests that Plaintiff supplement his response to Interrogatory No. 1 [ECF 37-2 at 1–7] to reconcile the discrepancies between the response and his medical records—particularly a UNM report [ECF 37-4]. Mot. at 1–5, 8; Tr. at 5:11–17. The City concedes, however, that it may be difficult for Plaintiff "to try to synthesize all of the information that he may have given to different providers." *Id.* at 25:11–14. Consequently, the City suggests that he may simply incorporate into his supplemental response the applicable medical records (e.g., the UNM report) by reference—and that such a response would suffice. *Id.* at 24:20–26:1.

---

² The City further observes: "While the Plaintiff states he has provided 14,427 pages of records, over 7,000 pages are from UNM [University of New Mexico Hospital] and are related to Plaintiff's hospitalization and treatment related to the incident at issue in this litigation, 1,500 are related to Plaintiff's employment and lost wages, 2,000 pages are related to the records submitted to the Social Security Administration concerning the Plaintiff's disability and hundreds of pages are related to the Plaintiff's expert witness disclosures." Reply at 4.

### B. Plaintiff's Arguments

Plaintiff acknowledges that the City's first requests for production asked for "a release for medical and mental health records from 1997 through the present." Resp. at 2. Plaintiff claims, however, that this request is "too broad, both in terms of time and [its lack of any] limitations on the type of treatment records sought." Resp. at 2–3, 8–18. Plaintiff asserts that, in addition to providing over 14,400 pages of documents, he has already "provided releases allowing Defendants access to his medical and mental health records . . . from May 24, 2008, through the present— [nearly] 15 years of records," ten of which are prior to the May 2018 incident. *Id.* at 7; *see also id.* at 8 (asserting that the Local Rules seem to suggest "that five years of prior treatment records are sufficient in most cases" (citing D.N.M.LR-Civ 26.3(d))).

Plaintiff contends that "[w]hat happened 26 years ago is, at most, of very marginal relevance" because "the core of Plaintiff's injuries relates to [his] physical injuries arising from" the May 2018 incident. *Id.* at 10–18 (also suggesting that Plaintiff suffered "new physical injuries [in May 2018] for which no pre-existing basis may reasonably be argued or inferred" and that "[a] jury may reasonably find that Plaintiff's psychological injuries . . . are less than one-sixth of his total injures" (quotation omitted)). In addition, Plaintiff maintains that records from before 2008 "mean little relative to [his] physical injuries [from the May 2018 incident] and the [resulting] aggravation of his mental health disabilities." *Id.* at 10–11, 16–17. Finally, Plaintiff argues that there is simply no need to "establish that certain conditions are pre-existing when that is already established in the records produced to date." *Id.* at 9–10, 13, 17 (asserting that Plaintiff's "preexisting injuries are already well documented and acknowledged by him and his experts" and that the 15 years' worth of records will "give Defendant ample opportunity to point at pre-existing conditions.").

4

Lastly, Plaintiff's counsel represents that they have "made a good-faith effort to ask [Plaintiff] to answer [the interrogatory] questions and [have] provided the information he recalls," along with responsive medical records. Tr. 45:12–14; Resp. at 2 n.2.  In addition, they assert that they have spent "countless hours (and days)" answering the 19 subsections of Interrogatory No. 1 —and that [defense counsel] could have "gleaned [this information] from the available records" herself "rather than demanding the Plaintiff's attorneys analyze and summarize [it] for her." Resp. at 7–8 n.3.  Consequently, Plaintiff asserts that his original response was adequate and requires no further supplementation.  *See id.* at 2 n.2.

## III. ANALYSIS

### A. Plaintiff Must Authorize the Additional Access to His Medical Records

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering [1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  In addition, the Tenth Circuit "review [a] district court's ruling [on a discovery motion] for abuse of discretion." *United States v. Muhtorov*, 20 F.4th 558, 629–30 (10th Cir. 2021).

The Court finds that the requested medical records are both "relevant to [Plaintiffs'] claim[s]"—particularly his claims for alleged damages exceeding $10 million—and relevant to the City's "defense" to those claims. Fed. R. Civ. P. 26(b)(1).  Specifically, these records are relevant as to whether, and to what extent, Plaintiff's various pre-existing medical conditions contributed

5

to his overall claim for damages. *See also* Reply at 4–5 (representing that "[m]any of Plaintiff's physical and mental health injuries were caused and/or treated in [the City's requested] timeframe" and that medical records from this timeframe are necessary to "determine the nature, extent and duration of the Plaintiff's injuries . . . . prior to his contact with the Defendants").[3] The Court finds that the requested records are necessary for the City to reasonably reconstruct a physical and psychological health profile of Plaintiff *prior to* his encounter with the individually-named Defendants on May 24, 2018. The Court finds that establishing that baseline is essential to the City's efforts to evaluate Plaintiff's claims, particularly with respect to causation and damages.

Next, the Court finds that, although the requested release for medical records goes back to the late 1990s, the request nonetheless is "proportional to the needs of the case." *Id.*[4] To begin, the Court notes that the City is not seeking medical records for Plaintiff's entire life, but only those chronicling various medical conditions beginning with a very serious automobile collision when Plaintiff was 30 years old. Moreover, (1) the extent to which Plaintiff's pre-existing injuries were aggravated by the May 2018 incident is an extremely "important[t] . . . issue[ ] at stake"; (2) "the amount in controversy" is exceptionally large;[5] (3) Plaintiff is able to easily provide "access to

---

[3] During oral argument, the City offered other uses for the medical records, but the Court advised the parties that it would restrict its analysis to the singular justification set forth in the City's Motion: "to evaluate [Plaintiff's] claims." Tr. 16:3–13, 46:22–47:14.

[4] Although the Motion seeks a HIPAA release for records dating back to 1997, the City's briefing and oral argument clarified that the seminal event in Plaintiff's medical history in which the City is interested is the automobile collision in which Plaintiff was seriously injured, one of his passengers died, and for which Plaintiff was later sent prison. *See, e.g.*, Mot. at 5; Tr. at 10:13–11:5, 23:18–22, 26: 28:21–29:6. The Court understands the date of that collision to be December 31, 1998.

[5] Even if the Court uses Plaintiff's math and only considers 1/6 of the total amount in controversy (to correspond to Plaintiff's estimate of his psychological injuries compared to his physical injuries), the Court still finds 1/6 of the total to be sufficiently large to weigh in favor of disclosing these records. Moreover, the City has represented that it is also seeking records pertaining to Plaintiff's physical injuries (which Plaintiff approximates as 5/6 of a total damages award). *See, e.g.*, Mot. at 6 (the City seeking to "determine whether the Plaintiff had pre-existing *medical*/mental health issues" (emphasis added)) Tr. at 28:15–29:6 (the City discussing why it may have still filed its Motion, even if Plaintiff had only alleged "garden variety" psychological injuries).

6

[this] relevant information" by signing a release; (4) Plaintiff's attorneys have access to significant "resources"; (5) the requested release would significantly assist the City in "resolving the issue[ ]" of properly evaluating Plaintiff's alleged damages; and (6) "the burden or expense" of providing this release is "outweigh[ed] [by] its likely benefit" of providing relevant information to an important issue in this litigation—the extent to which Plaintiff's pre-existing injuries were *aggravated* by the May 2018 incident.  *Id.*

Although the Local Rules require five years of prior medical records to be provided with a plaintiff's initial disclosures in cases such as this, *see* D.N.M.LR-Civ 26.3(d), Plaintiff cites to no rule or authority precluding the disclosure of records outside of this window.  As noted above, Rule 26(b)(1)'s standard of discoverability is whether the information is "relevant" and "proportional to the needs of the case."  In addition, the City has represented that the records going back to the 1997–98 timeframe are necessary because that is when "Plaintiff suffered a closed head injury and appears to coincide with the first date he provided concerning his PTSD and bipolar (unspecified) diagnosis."  Mot. at 6; *cf.* Tr. 35:6–38:5 (discussing the opinion of Plaintiff's expert that "there has been a 50-percent exacerbation or aggravation in at least the major depressive order and the PTSD"—and observing that this opinion was based on a "forensic interview" but not the medical records).  Furthermore, the City is not requesting this information to merely prove the *existence* of pre-existing conditions—but rather to "determine the *nature*, *extent* and *duration* of the Plaintiff's injuries . . . . prior to his contact with the Defendants," Reply at 4–5 (emphasis added)—so that it can "properly evaluate the Plaintiff's damages."  Mot. at 6.  And records pertaining to the geneses and initial phases of Plaintiff's pre-existing injuries are relevant to, and likely to provide valuable information on, an important issue at stake in this litigation—Plaintiff's claimed damages.

In sum, the Court finds that the requested records are sufficiently relevant and proportional to justify their disclosure. Consequently, the Court will require Plaintiff to execute a HIPAA-compliant release that permits the City to obtain his medical records dating back to December 31, 1998, or the date of his serious automobile collision if it occurred on a date other than December 31, 1998.[6] This release must extend from the date of that collision to May 24, 2008, which is the beginning of the period governed by the HIPAA release that Plaintiff has already provided the Defendants. *See* Resp. at 7.

### B. Plaintiff Must Identify Responsive Documents

Federal Rule of Civil Procedure 33 provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). In addition, Rule 33(d) allows a party to answer an interrogatory by producing documents if (1) the answer "may be determined by examining, auditing, compiling, abstracting, or summarizing" business records; (2) "the burden of deriving or ascertaining the answer will be substantially the same for either party"; and (3) the answering party "specif[ies] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d); *see, e.g.*, *Wetzel v. Diestel Turk. Ranch*, No. 1:20-cv-1213 DHU/KRS, 2022 WL 16635292, 2022 U.S. Dist. LEXIS 200528, at *10 (D.N.M. Nov. 2, 2022) (Sweazea, J.) ("find[ing] that [the answering party] sufficiently complied with Rule 33 by producing the reports that reflect the information sought by [the inquiring party] because the burden would be substantially the same for either party to compile or summarize the

---

[6] This Order contemplates that the City will also be permitted to obtain Plaintiff's medical file at the New Mexico Corrections Department. The Court emphasizes that this Order authorizes access only to Plaintiff's *medical* file, not the remainder of his inmate file.

data from the reports"—but still requiring the answering party to "provide supplemental responses" identifying "all responsive reports and any other responsive documents").

Although Interrogatory No. 1 has 19 subsections,[7] Plaintiff is still required to answer this interrogatory "fully." Fed. R. Civ. P. 33(b)(3). In addition, Plaintiff does not contest that there are significant discrepancies between his current response and the available medical records—his good-faith efforts notwithstanding. *Compare* Mot. at 2–5 (identifying the discrepancies), *with* Resp. at 2 n.2, 8 n.3 (discussing Plaintiff's efforts to answer the interrogatory—but not addressing the alleged discrepancies); *see also* Tr. at 44:5–46:12 (acknowledging the likelihood of discrepancies between what Plaintiff remembers and what his medical records might show). Furthermore, the parties do not dispute that "the burden [of resolving the discrepancies] would be substantially the same for either party" if they were to "compile or summarize the [applicable] data from the reports." *Wetzel*, 2022 U.S. Dist. LEXIS 200528, at *10. Consequently, the Court will require Plaintiff to address the identified discrepancies by supplementing his response to Interrogatory 1 to "specify[ ] the records that must be reviewed" to fully answer the applicable questions. Fed. R. Civ. P. 33(d).

## C. Rule 37 Sanctions

Although the City has requested its fees and costs under Federal Rule of Civil Procedure 37(a)(5), the Court finds and concludes that doing so is not appropriate in this case. That rule excuses a party from paying its adversary's fees and costs if the party's "non-disclosure, response, or objection was substantially justified" or if "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(ii)-(iii). The Court relies on both bases to excuse Plaintiff from

---

[7] This interrogatory asks the following: "With regard to each of the following [19 different medical] conditions, please list the date of the onset of the condition, the cause of the condition, the name, address and the telephone number of any medical professional that diagnosed or treated you for this condition." ECF 37-2 at 1–2.

paying the City's fees and costs. Without the need for a Court order, Plaintiff volunteered access to an additional five years' worth of his medical records beyond the five years contemplated in the Court's Local Rules. Moreover, as of the date of the hearing, Plaintiff had disclosed more than 14,000 pages of medical records as well as a detailed expert witness disclosure, the sum total of which provided a good deal of insight into his medical and psychological conditions. The Court also notes that Plaintiff has readily admitted, rather than concealed, the pre-existence of several medical and psychological conditions. These reasons persuade the Court to conclude that an award of fees and costs to the City would be unjust. Furthermore, as the Court stated at the hearing, the questions presented in the briefing were relatively complex, particularly with respect to relevance and proportionality. The Court considers Plaintiff's opposition, though ultimately unsuccessful, to have been substantially justified.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that, no later than **February 10, 2023**, Plaintiff shall:

(1) provide a signed HIPAA-compliant release allowing the City to obtain his medical records from December 31, 1998 (or the date of the automobile collision, if different), to May 24, 2008; and

(2) supplement his response to Interrogatory 1 to address the identified discrepancies [ECF 37 at 2–5], including by "specifying the records that must be reviewed" to fully answer the applicable questions. Fed. R. Civ. P. 33(d).

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE